Duncan, J.
delivered the opinion of the Court. ,
This case is brought up in a very nude state, and affords another instance of the evils flowing from the Act requiring Courts of Justice to reduce their opinions to writing and file them of record in the cause. This course is now unfortunately pursued, instead of the bill of exceptions, for which it is a most miserable substitute. Cases are now brought up without the facts; questions are frequently multiplied on questions, which do not call the attention of the Court to any precise state of facts,—requiring the opinion of the Court under the circumstances of the case, without stating, what the circumstances are, or how the questions arose from the evidence, or are pertinent to the issue. This provision, as experience, the best test and instructor convinces us, .though in theory it looked well, yet in practice, like many other beautiful theories of government and lawj works badly; and I *152 now acknowledge I am as desirous to see it expunged from the Statute-book, as I was anxious to see it there.
The'errors assigned and insisted on, are three':
1. The answer to the third question. On which the plaintiffs in error required the-opinion of the Court.
2. In the answer to the first, second, and fourth points made by them on the trial. Which they complain of, as not containing full and fair answers.
3. The answer of the Court to the inquiries made, by one of the jurors at the conclusion of the charge.
The construction of every written instrument is the exclusive province of the Court, but the description of the land conveyed by any deed, its limits and contents,'are often mixed questions of law and fact. Here there is no patent ambiguity in the assignment, requiring the aid of extraneous evidence to ascertain the extent or fix the boundaries of the grant. The description can give all certainty. It was all the land within Mary Lee’s survey and patent, a grant by metes and bounds. The construction put on it by the Court was the true and accurate one; for Moses Rush did acquire the interest of 'Mary Lee in all lands within the survey and patent, taking on himself the risk of all interferences or incumbrances ;—that is, he bought subject to them.
' Whatever just complaints the defendant in error might have against the answers of the Court on the first, second, and fourth points, the plaintiffs complain most ungraciously j for they are all in their favour. They contain an assent directly and affirmatively to their propositions. What could they- ask or expect more ? v
But the eighth exception is one of the utmost importance. Upon one of the jurors enquiring of the Court, at the conclu-' sion of the chárge, whether the jury could allow to,the Collins’s any thing for the improvements since the reference and before -the action brought, the Court answered, that if the jury believed there was an unreasonable delay in bringing the-ejectment after the decision and reference, and in the mean time the defendants had made valuable improvements, it would give them such an equity, that the jury might allow a reasonable sum for the improvements, if they were satisfied the land was increased in value by the labour of the defen* *153 dants. At first, I could not see how the plaintiffs in error (the defendants below) could complain of this. It was apparently" for their benefit, .and if it was a matter, altogether irrelevant, a mere surplusage in the verdict, it might be rejected, and judgment entered generally that the plaintiff below should recover possession of the land. This was my first impression; but, on examining the record pioduced, it appears, the finding of the jury was a special one. “ The jurors in the above cause find for the plaintiff; the plaintiff to pay the' defendants three hundred dollars for the improvements made on the land between the time of the arbitrators making the report (by an apparent acquiescence therein_) and the time of bringing the ejectment; the three hundred dollars tc> be paid the defendants before any writ issdes to dispossess them.”' It is therefore manifest, that this consideration formed the ground-work of their verdict,—entered info its very essence. It is but one judgment—nothing distinct ■—or capable of division—where part may be affirmed and part reversed, on the ground that utile per inutile non viteatur.
The Court in their answer were taken by surprise; the point had not been argued by the counsel; and fn the close of nót a very short charge .it was suddenly sprung upon them, and instantly answered, without turning it in their minds, or deliberating upon it, as they would have doné, had their attention been drawn to it by the course of the argument; and this will'account for the palpable error into which the Court fell. ■ The plaintiff had shewn a legal title. The Court were of opinion that the report of the referees, in,a former action .was not per se conclusive on his right; but the acquiescence and the subsequent improvements were another question. These might be attended with such circumstances, a lying by, and ensnaring the defendants into an opinion that their opponent was satisfied with the decision wh'ich the referees had made, encouraging him to go on for years with valuable improvements under the eye and with the connivance of the party,—as would call for the interposition of a Court of chancery by injunction, to prevent the plaintiff from recovering. Not having the testimony before us, we can give no opinion, whether the acquiescence and acts of Mary Lee and *154 opinion, whether the acquiescence and acts oí Mary Lee and. Moses Rush, were such as would entitle the plaintiffs in error to seek relief 5 but the Court of Common Pleas, who had all the evidence before them, should in answer to the juror’s inquiries, have instructed them whether they' were so or not. But nothing could be. more erroneous, nothing more pregnant with mischief, more inconsistent with all our sense of the rights of property, or with the unconditional grant made by the State, than to heave it to the jury, as here was done, to say whether the delay was unreasonable, and if they believed it was, that then they could make the plaintiff pay smart money. The Court in fact say, it is true the plaintiff has a legal right; he is not barred by any positive limitation ; he has not, by an acquiescence in the report of the referees or by encouragement to the defendants prejudiced their title in equitybut if you believe his delay in bringing the ejectment is unreasonable, and if you .believe that the value of the lands is increased by the improvements, then you may allow the defendants a reasonable sum for them.’* This is improving a man out of his land with a witness. Delay alone, short of the time allowed by law to every one to prosecute his claim, forms no bar. The man, whose legal title is affected by time, loses it. The law extinguishes it. But until that period runs round, it remains his, though covered with the most costly edifices or most expensive improvements, without the payment of any redemption money. It does not stand mortgaged, the trespasser has no lien ; for then there can be no line drawn. The law in its wisdom has fixed the time : it will not leave it to the- discretion of any men. The limitation of time is legislative enactment not judicial discretion. There can be no terms made j no line drawn. The jury can make no bargain for the parties. They are to decide on the rights of the parties according to the laws of the land. They cannot make a plaintiff pay for his own land, or a defendant surrender up •his possession, if he has a right to retain it, on receiving such pecuniary compensation for his labour as they may think fit to allow him. This would 'be the exercise of an arbitrary discretion, the law of tyrants, the jus vagum, the most miserable of servitudes, as it would have no certain rule for its government. It would be an invitation to intrusion, a reward and bounty to trespassers. When the law has fixed the *155 •time in which the non-prosecution of a right shall operate as a forfeiture, Courts and juries cannot circumscribe it. This would be jus dare and not jus dicere,—an assumption of legislative power. All attempts to obtain a law for the purpose have proved abortive. They have been wisely and firmly resisted by the Legislature, as violating the rights of property, and'repugnant to the Constitution. And sure I am, the respectable Court by whom this error was made, on reflection‘-would be the first to acknowledge their error, and now to answer, there can be no such compromise of men’s rights against their will. The plaintiff had a right to stand on his title;—the defendants on their title and possession. The plaintiff in his writ complained that the defendants were in the actual possession of this tract of land, the right of possession and title to which he averred was in him, and that he ■was prepared to prove it. The defendants denied his right, and on this they joined issue. - This issue the jury , were sworn to try. How then could the jury, on this issue, find the right to be in the plaintiff, and yet make it ,a condition on which the restoration of that right is to depend, that he shall pay the trespasser for his trespass.? Or how on the other hand could they say, there were such acts done by the plaintiff, such acquiescence in the decision of judges of the parties’ own choice, such encouragement given to the defendants to continue their improvements, qs in equity, affect the conscience of the plaintiff, and prejudice his right, so as to render it against conscience for him to disturb the possession of the defen- ' dants, but still they shall deliver up the possession for such a price as the jury think fit to allow them. If the defendants made out any case for relief, it was for the land itself, and not compensation in money for their -labour. If they made out no case, the plaintiff was entitled, to an unconditional verdict.—In either way, the answer was wrong, and misled the jury.
There are many-cases in ejectment, where conditional verdicts have been recommended by the Court, in matters, of trust and executory contracts. There being no Court of chancery in this State, the Courts of law, lest there should be a failure of justice, exercise chancery power, taking the rules of chancery for their guides. They, by the medium of a jury and conditional verdict, compel indirectly what chan *156 eery decrees directly—the specific execution of contracts, the performance of trusts. But no Court of chancery could restrain the legal owner of lands from recovering the possession from one who had acted against his will, until he had paid the trespasser for' such improvements as it pleased him to make against the will of the owner, when he had kept him in law and exposed him to expense in the recovery of his just rights.
. There is no such defence at law, and it is opposed to every principle of morality, justice, and equity.
Judgment reversed, and a venire facias « de novo awarded.